IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

T.A.B.,[1]

                Plaintiff,

vs.                                 Case No. 19-1021-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

**MEMORANDUM AND ORDER**

On September 3, 2015, plaintiff filed an application for social security disability insurance benefits. The application alleged a disability onset date of October 31, 2010. The application was denied initially and on reconsideration. An administrative hearing was conducted on November 14, 2017. The administrative law judge (ALJ) considered the evidence and decided on February 15, 2018 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010)(internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice

2

between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 12-18).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 13-14). The ALJ decided that plaintiff's claim failed at the second step of the process. In other words, the ALJ decided that plaintiff failed to demonstrate that she had a "severe" impairment or a combination of impairments which are "severe" prior to her date last insured.

The ALJ decided that plaintiff had the following impairments: mild carpel tunnel syndrome, hypothyroidism, hyperlipidemia, hypertension, depression and anxiety. But, he concluded that plaintiff's impairments did not significantly limit her ability to perform basic work activities during the time period relevant to her claim.

III. REMAND SHALL BE ORDERED BECAUSE OF A FAULTY STEP TWO ANALYSIS

Plaintiff contends that the ALJ's findings as to the severity of plaintiff's mental impairments are not supported by substantial evidence. Plaintiff's burden to show a severe impairment at step two has been characterized as "de minimis." Cowan v. Astrue, 552 F.3d 1182, 1186 (10th Cir. 2008). "An impairment is not severe only if it 'would have no more than a minimal effect on an

individual's ability to work, even if the individual's age, education, or work experience were specifically considered.'" Hill v. Chater, 99 F.3d 1149, 1996 WL 627325 *2 (10th Cir. 1996)(quoting SSR 85-28, 1985 WL 56856, at *3); see also Church v. Shalala, 1994 WL 139015 *2 (10th Cir. 4/19/94)(citing to SSR 85-28 and describing step two as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint). "[R]easonable doubts on severity are to be resolved in favor of the claimant." Owens v. Berryhill, 2017 WL 1881001 *3 (D.Kan. 5/9/2017). At the same time, "a showing of the mere presence of a condition is not sufficient" to show severity. Cowan, 552 F.3d at 1186. "An impairment is 'not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.'" Warner v. Astrue, 338 Fed.Appx. 748, 750 (10th Cir. 2009)(quoting 20 C.F.R. § 404.1521(a)). "Basic work activities are the 'abilities and aptitudes necessary to do most jobs' and include the facility to understand, remember, and carry out simple instructions; use judgment; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting." Id. (quoting 20 C.F.R. § 404.1521(b)).

Plaintiff's testimony supported a finding that she suffered from "severe" anxiety and depression. Plaintiff testified that she "wouldn't leave the house," had "panic attacks," felt

4

"useless," could not do her job (drive a forklift) because of her medication (Xanax), and put off personal hygiene. (Tr. 33-36 & 42). Plaintiff's spouse also described panic attacks, forgetfulness and social isolation either from plaintiff's mental condition or as side effects from her medication. (Tr. 246-47). But, the ALJ discounted plaintiff's testimony and her husband's statement because they were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 16 & 18).

The ALJ noted that plaintiff was only prescribed medication by her primary care physician during the time period in question and that she did not receive treatment from a mental health specialist or undergo any type of therapy. (Tr. 16). He further commented that plaintiff was not treated in an emergency room for panic attacks. (Tr. 17). Also, he remarked that plaintiff was consistently noted as alert and oriented, with clear speech and good judgment and insight in the records of her doctor visits. (Tr. 17). The ALJ concluded that plaintiff had only a mild limitation in understanding, remembering or applying information in part because her mental status examinations did not show any difficulty with her memory functioning. (Tr. 17). He determined that plaintiff had only a mild limitation interacting with others because she was able to relate appropriately to her health care providers and she was not documented to have significant anxiety

5

or depression. (Tr. 17). The ALJ further concluded that plaintiff had only a mild limitation in concentrating, persisting or maintaining pace because her examination did not note any limitations in this area and because plaintiff reported that she could complete some tasks, like some household chores. (Tr. 17). Finally, he found that plaintiff had no limitation in adapting or managing herself because there was no evidence that she was unable to control her behavior. (Tr. 17).

The ALJ gave minimal weight to the medical source statements from doctors who examined plaintiff because their reports were completed well after plaintiff's date last insured and did not discuss an onset date. (Tr. 18). At least two of these statements, although they post-date plaintiff's date last insured, indicate that plaintiff's anxiety and depression do substantially limit her basic work abilities. (Tr. 345-349).

The court finds that the ALJ's decision is not supported by substantial evidence and does not follow legal standards. The ALJ based his decision, in large part, upon plaintiff's treatment decisions. He discounted plaintiff's claims of panic attacks because she did not go to the emergency room. And he discounted plaintiff's and her husband's description of her symptoms because

she was not treated by a mental health specialist or undergo therapy.[2]

As plaintiff has argued, the Tenth Circuit in Grotendorst v. Astrue, 370 Fed.Appx. 879, 883 (10th Cir. 2010) held, referring to 20 C.F.R. § 404.1520a, that consideration of the amount of treatment received by a claimant should not play a role in an ALJ's determination of the severity of a mental impairment. The Tenth Circuit stated:

> This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations.

Id. The court reads Grotendorst as finding that lack of treatment for a mental impairment is not substantial evidence that the impairment is not severe and that consideration of the absence of mental health treatment at step two is contrary to legal standards. In several other cases, district courts have followed the holding in Grotendorst and found error in an ALJ's analysis. E.g., Rae Dejulio v. Berryhill, 2019 WL 1177983 *4 (W.D.Okla. 3/13/2019); Herrera ex rel. Herrera v. Berryhill, 2019 WL 1014797 *6 (D.N.M. 3/4/2019); Diel v. Berryhill, 2017 WL 933241 *2 (W.D.Okla. 2/2/2017); Perez v. Colvin, 2014 WL 5473751 *12 (D.Colo. 10/29/14);

---

[2] The record indicates that plaintiff did have psychotherapy for a period beginning July 30, 2015 and sporadically until March 29, 2016. (Tr. 418). This, of course, is after plaintiff's date last insured.

7

Price v. Colvin, 2014 WL 943101 *7 (D.Kan. 3/11/2014); Crabill v. Astrue, 2013 WL 1191233 *4 (D.Colo. 3/21/2013); Hiserodt v. Astrue, 2011 WL 3759774 *8 (D.Colo. 8/25/2011); see also, Willis v. Berryhill, 2017 WL 1011440 *6 (E.D.N.C. 3/14/2017)(failure to seek mental health treatment is not an appropriate reason to discount a claimant's own testimony about mental health symptoms). The court acknowledges defendant's reference to 20 C.F.R. § 404.1529(c)(4) which states that statements describing the intensity, persistence and limiting effects of symptoms will be evaluated in relation to objective medical evidence and other evidence. But, the court assumes that the Tenth Circuit was well aware of this provision in Grotendorst and decided that for the purposes of determining whether the minimal showing required at step two was satisfied, a lack of treatment of a mental impairment as reflected in the objective medical evidence would not amount to substantial evidence because it could be too easily explained by factors extraneous to the symptoms' limiting effects.

Aside from referring to the amount of treatment, the ALJ stated that plaintiff was "consistently" noted to be alert and oriented, with good judgment and insight and clear speech. He also noted that plaintiff was never documented to be significantly anxious or depressed and that her provider never documented any panic attacks.

The record indicates that plaintiff visited her personal physician at least 15 times from October 31, 2010 to March 31, 2014. (Tr. 300-323). Almost every record from those visits indicates that plaintiff had anxiety for which she was taking medication, sometimes seemingly large amounts of Xanax. Her medication was also adjusted at times which might indicate that her symptoms were not adequately controlled or that side effects were an issue. Once there was a notation of depression. (Tr. 321). And there were multiple notations of stress or stress headaches. (Tr. 313, 321, 323). The form used by plaintiff's personal physician to document plaintiff's visits changed. Beginning November 11, 2013 and for visits after the date last insured, the records usually reflected anxiety and/or depression, but also that there was no acute distress, that plaintiff was alert, oriented and showed good judgment and clear speech. On April 24, 2014, the doctor noted that plaintiff was anxious appearing and had a sad affect. (Tr. 297).

Thus, the "consistent" notations relied upon by the ALJ were recorded almost entirely outside the relevant time period. The court does not find that those records are immaterial. But, in a step two analysis the ALJ should not rely upon them while almost completely discounting the medical source statements (that support a finding of a severe mental impairment) because the reports were authored outside the relevant time period.

9

In considering plaintiff's claim that substantial evidence does not support the ALJ's decision, the court is also concerned by the ALJ's reliance upon the absence of evidence as evidence.[3] Defendant argues that the ALJ's findings were "reasonable in light of the limited record." Doc. No. 10, p. 8. The court acknowledges that at step two plaintiff has the burden of proof, albeit it slight. But, defendant appears to be taking too much advantage of the "limited record."

The ALJ's findings as to plaintiff's mental functional limitations include the following: "the mental status examinations did not show any difficulty with [plaintiff's] memory functioning"; "[plaintiff] was not documented to have significant anxiety or depression . . . that would have interfered with her social interaction"; "[plaintiff's] mental status examinations did not note any limitations in [concentrating, persisting, or maintaining pace]"; and "there is no evidence in the record that plaintiff was unable to control her behavior." (Tr. 17). Thus, the ALJ relies significantly upon the absence of documentation. In addition, the court is not convinced: that plaintiff's ability to interact with co-workers and supervisors may be gauged by her relations with her health care providers; that it is reasonable to conclude plaintiff has only a mild limitation in concentration,

---

[3] The Tenth Circuit has stated "[t]he absence of evidence is not evidence." Kellams v. Berryhill, 696 Fed.Appx. 909, 915 (10th Cir. 2017).

persisting and pace because she is able to complete some household chores; and that plaintiff's unsubstantiated ability to "control her behavior" supports the finding that there is no limitation in plaintiff's ability to adapt and manage herself in a work situation.

In sum, the medical records indicate that during the relevant time period plaintiff was consistently diagnosed with anxiety and sometimes depression. She was taking medication in seemingly heavy doses. This appears consistent with plaintiff's testimony describing significant limitations in her work abilities. Plaintiff's husband also corroborates plaintiff's testimony. The ALJ's decision substantially relies upon the amount and kinds of treatment plaintiff did <u>not</u> receive. The Tenth Circuit has stated, however, that the lack of treatment does not necessarily mean that an impairment does not exist or impose functional limitations. The ALJ's decision also relies too much upon the absence of documentation in the limited medical record, and draws scantly-supported conclusions regarding plaintiff's functional abilities from that record. Finally, the ALJ's decision gives weight to medical reports that are dated after the date last insured while discounting medical source statements solely because they were made after the date last insured.

IV. CONCLUSION

For the above-stated reasons, the court finds that the ALJ's step two analysis is not supported by substantial evidence and fails to follow legal standards. The court directs that the decision of the Commissioner be reversed and that judgment be entered pursuant to sentence four of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 2nd day of August 2019, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge